UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BTC-USA Corporation,

       Plaintiff,     **MEMORANDUM OPINION**
                **AND ORDER**
 v.               Civil No. 07-3998 ADM/JSM

Novacare (a French entity), Mougeot-Copy
(a.k.a. Papeteries Mougeot SA) (a French
entity), Koehler (a.k.a. Papierfabrik
August Koehler AG) (a German entity),
Richard Greene (an individual), Marc
Defosse (an individual), and Sebastien
Courtois (an individual),

       Defendants.

_____

Jason A. Lien, Esq., Maslon Edelman Borman & Brand, LLP, Minneapolis, MN, on behalf of the Plaintiff.

Michael A. Ponto, Esq., Peter C. Hennigan, Esq., and Catherine G. Davis, Esq., Faegre & Benson LLP, Minneapolis, MN, on behalf of Defendants Novacare and Mougeot-Copy.

David L. Sasseville, Esq., Lindquist & Vennum PLLP, Minneapolis, MN, on behalf of Defendants Koehler, Richard Greene, and Marc Defosse.

_____

## I. INTRODUCTION

On April 10, 2008, the undersigned United States District Judge heard oral argument on Defendants Novacare and Mougeot-Copy's (collectively "Novacare") Motion to Dismiss the Amended Complaint [Docket No. 10] and Defendants Koehler, Richard Greene ("Greene"), and Marc Defosse's ("Defosse") Motion to Dismiss the Amended Complaint [Docket Nos. 20, 30]. Plaintiff BTC-USA Corporation ("BTC") asserts claims of breach of contract, promissory estoppel, tortious interference with business expectancy, tortious interference with contract,

fraud, and conspiracy. For the reasons stated herein, Defendants' Motions to Dismiss are granted.

## II. BACKGROUND

BTC is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. Am. Compl. ¶ 1. Novacare and its subsidiary Mougeot-Copy are French entities with their principal places of business in France. Id. ¶ 2. Koehler is a German entity with its principal place of business in Germany. Id. ¶ 4. Greene resides in New York and is the Secretary, Executive Vice President, and Chief Executive Officer of Koehler America, a subsidiary of Koehler. Id. ¶ 5, Greene Decl. [Docket No. 24] ¶ 2. Defosse resides in France and previously worked for Mougeot-Copy and currently works for Koehler. Id. ¶ 6.

BTC is a paper broker that sold carbonless paper during the time periods relevant to the current litigation. Id. ¶ 11. To sell carbonless paper, BTC needed a relationship with a paper mill that produces and supplies carbonless paper. Id. ¶ 13. In March 2003, a Mougeot-Copy representative approached BTC and proposed that BTC cancel its relationship with its current supplier and represent Mougeot-Copy's carbonless paper line instead. Id. ¶ 15. Defosse and Sebastien Courtois ("Courtois") conducted discussions with BTC regarding Mougeot-Copy's interest in forming an exclusive relationship with BTC. Id. ¶ 18. On three instances, Defosse traveled to Minnesota to meet with BTC and its customers, on two of those occasions Courtois joined Defosse. Id. ¶¶ 32, 35; Defosse Decl. [Docket No. 25] ¶ 6. Throughout the negotiations Mougeot-Copy, through Defosse and Courtois, represented that it was interested in a long-term relationship with BTC and was committed to working with BTC in the United States. Id. ¶¶ 15-24. Finally, on or about March 2004, the parties orally agreed that Mougeot-Copy would be

BTC's sole supplier and BTC would be Mougeot-Copy's sole distributor in the United States. Id. ¶ 25. Accordingly, BTC terminated its relationship with its previous supplier and began taking the necessary steps to sell Mougeot-Copy's paper. Id. ¶ 28. From July through September 28, 2004, BTC placed orders with Mougeot-Copy and received shipments of customer orders and inventory from Mougeot-Copy. Id. ¶ 34. During that time, Mougeot-Copy operated under an agreement with Koehler whereby Koehler would sell paper to Novacare, which would then market and distribute the paper under its proprietary trade mark "Mougeot-Copy." Koehler and Novacare agreed to terminate their relationship in May 2004 when Koehler decided to stop manufacturing carbonless paper for Novacare.

On September 28, 2004, Mougeot-Copy informed BTC that it was exiting the carbonless paper industry and would only supply BTC with carbonless paper until the end of 2004. Id. ¶ 36. Mougeot-Copy informed BTC that although it would no longer supply BTC with carbonless paper, BTC could purchase carbonless paper with Koehler. Id. However, Koehler subsequently informed BTC that, contrary to Mougeot-Copy's representation, Koehler would not supply BTC with carbonless paper. Id. ¶ 42.

BTC contends Mougeot-Copy deceived BTC to believe it intended to form a long-term partnership and used BTC to gain access to clients and business information, which it then used to its advantage when it began working with Koehler to sell carbonless paper in the United States. Id. ¶¶ 30-31, 43. BTC contends that as a consequence, it suffered significant financial losses and serious, permanent damage to its reputation. Id. ¶ 44.

### III. DISCUSSION

In its Motion to Dismiss, Novacare asserts the Court should dismiss the Amended

Complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, for failing to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Novacare contends that BTC agreed to a forum selection clause included in its purchase order agreements requiring that any disputes arising between BTC and Novacare be settled in France. Novacare also asserts that the Court should dismiss BTC's Amended Complaint because the allegations set forth fail to state a claim for which relief can be granted. Koehler, Greene, and Defosse submitted a motion to dismiss asserting that the Court should dismiss Defosse if it dismisses Novacare for improper venue and that the Court should dismiss Koehler and Greene because it lacks personal jurisdiction over them.

**A.      Forum Selection Clause--Novacare and Defosse**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint on the basis of improper venue. Fed. R. Civ. P. 12(b)(3). There is disagreement among the circuits regarding whether Rule 12(b)(3) or Rule 12(b)(6) is the proper vehicle for bringing a motion to enforce a forum selection clause and the Eighth Circuit has not ruled definitively on this issue. Rainforest Cafe, Inc. v. EklecCo, L.L.C., 340 F.3d 544, 546 n.5 (8th Cir. 2003). In the Ninth Circuit, Rule 12(b)(3) is the proper vehicle for bringing a motion to dismiss for improper venue based on a forum selection clause. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). In evaluating a Rule 12(b)(3) motion to dismiss, the court does not accept the pleadings as true and considers facts outside the pleadings. Id. Because the parties do not dispute that the Court should evaluate Novacare's Motion to Dismiss for improper venue according to Rule 12(b)(3), and do not dispute that the Court may consider

facts outside the pleadings to determine the proper venue, the Court need not decide the issue still unresolved by the Eighth Circuit.

When BTC needed paper supply from Mougeot-Copy it would place an order by fax or email indicating the quantity and quality of the paper sought and the time and place for delivery. Clavier Decl. [Docket No. 15] ¶ 5.  After negotiating the details with BTC, Mougeot-Copy would send BTC a pro forma invoice, which detailed the specifics of the order.  Id. ¶ 6.  The pro forma invoice also included the general conditions of sales, which included the following provision:

> **JURISDICTION AND DISPUTES**
>
> Registered office of the Seller (Laval/Vologne, France) is to be considered as elected domicile.
>
> All disputes arising between the Buyer and the Seller shall be exclusively settled by the competent court of Epinal (Tribunal de Commerce d'Epinal, Vosges).

Id. Attach. 3.  Before filling BTC's order, Mougeot-Copy required that BTC confirm its agreement to the terms on the pro forma invoice by writing, email, or some other method.  Id. ¶ 8.  On four occasions, Ron Michlitsch ("Michlitsch"), BTC's vice president, provided the confirmation required by Mougeot-Copy by signing the pro forma invoice and initialing the general conditions of sales.  Id. Attachs. 4-7.  In each instance, Michlitsch initialed the general conditions of sales adjacent to the forum selection clause.  Id.

Novacare contends that venue is improper because BTC agreed to the forum selection clause included with the pro forma invoices and thus agreed to resolve all disputes in France. BTC contends that because the forum selection clause was not included in the parties' March 2004 oral agreement and is not an implied term to the parties' contract, the forum selection

clause is unenforceable. BTC acknowledges that Michlitsch initialed the general conditions of sales but argues that doing so does not mean that BTC expressly, freely, and consciously agreed to the forum selection clause. Novacare contends that even if the forum selection clause was not included in the March 2004 oral contract, BTC expressed assent to the clause (indicated by Michlitsch's initialing the general conditions of sales), and thus agreed to modify the contract. Novacare contends that because BTC expressly agreed to the forum selection clause, the clause is enforceable, and requires that the Court dismiss BTC's Amended Complaint for improper venue.

The key question to determining whether venue is proper is whether the parties agreed to the forum selection clause. Because this case involves a dispute regarding the international sale of goods it is governed by the United Nations Convention on Contracts for the International Sale of Goods ("CISG"). Chateau Des Charmes Wines LTD v. Sabate USA, Inc., 328 F.3d 528, 530 (9th Cir. 2003) (stating that because the President submitted the CISG to the United States Senate, which ratified it, the CISG is valid and binding federal law). Pursuant to the CISG, parties may execute oral contracts and may modify contracts by "the mere agreement of the parties." CISG arts. 11, 29(1).

The Ninth Circuit addressed similar issues in Chateau Des Charmes Wines, 328 F.3d 528. In that case, the defendant included a forum selection clause in the invoices it sent to the plaintiff; however, unlike this case, there was no evidence that the plaintiff assented to the added term. Id. at 531. Defendant argued that plaintiff's failure to object constituted an agreement to the forum selection clause; however, the Ninth Circuit disagreed. Id. The court explained: "Nothing in the [CISG] suggests that the failure to object to a party's unilateral attempt to alter

materially the terms of an otherwise valid agreement is an 'agreement' within the terms of Article 29.  Here, no circumstances exist to conclude that Chateau des Charmes's conduct evidenced an 'agreement.'"  Id.

In the case at bar, when Michlitsch initialed the general conditions of sale BTC expressed its assent to the forum selection clause.  Pursuant to Article 29, parties are free to agree to modify previously agreed upon contracts, even if the modification constitutes a material alteration.  BTC assented to a material alteration of the oral contract.

BTC contends that the Court should not enforce the forum selection clause because doing so would result in hardship and surprise.  Whether the clause would result in hardship and surprise is relevant to determining whether the clause constitutes a material alteration not expressly agreed upon by the parties under Uniform Commercial Code § 2-207.  See Marvin Lumber and Cedar Co. v. PPG Indus., Inc., 401 F.3d 901, 911 (8th Cir. 2005); Revlon, Inc. v. United Overseas Ltd., No. 93 Civ. 0863, 1994 WL 9657 (S.D.N.Y. Jan. 12, 1994).  Not only does this case not involve the application of § 2-207, or the analogous article of the CISG, there is no dispute that the forum selection clause materially altered the oral contract.  Hardship and surprise may prevent enforcement in a case where a forum selection clause is unilaterally inserted into the contract without the express assent of the parties, it will not prevent enforcement in this case where BTC expressly agreed to the clause by initialing the general conditions of sales.

Next, BTC contends that Michlitsch did not assent to the forum selection clause when he initialed the general conditions of sales because he may not have read them and thus did not agree to them or he did not understand them to be an alteration because he did not negotiate the

7

original contract. This argument ignores the general principle of contract law that, "in the absence of fraud, misrepresentation or deceit, one who executes a contract cannot avoid it on the ground that he did not read it or supposed it to be different in its terms." N&D Fashions, Inc. v. DHJ Indus., Inc., 548 F.2d 722, 727 (8th Cir. 1976).

Finally, BTC argues that enforcement of the forum selection clause would be unreasonable because it is inconvenient, was not bargained for or freely entered into, and deprives BTC of a meaningful day in court. BTC contends that enforcement of the clause would deprive it of its day in court because of the substantive and procedural differences between the judicial systems in France and the United States. With regard to the procedural differences, BTC's vague assertion that the substantive and procedural differences between the French and US systems deprive it of its day in court, without any specific explanations as to why, is insufficient to demonstrate that enforcement of the forum selection clause would be unreasonable. Further, as other courts have pointed out, while the French system is different, it is not deficient. See Ana Distrib., Inc. v. CMA-CGM (Am.) Inc., 329 F. Supp. 2d 565, 567-68 (S.D.N.Y. 2004).

BTC also argues litigating in France poses a financial hardship. However, BTC has not alleged that it is incapable of litigating in France because of the economic expense and there is no support for the proposition that financial hardship by itself warrants a finding that the forum selection clause is unreasonable. See e.g., Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 594-95 (1991) (declining to set aside a forum selection clause even where it presented a financial hardship to the plaintiffs); Vilmar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 535-36 (1995) (affirming the Court's earlier holding that a forum selection clause that presents a

financial hardship does not lessen liability and thus does not deprive the plaintiff of its day in court).

Because the Court has determined that the forum selection clause is enforceable, venue in the United States District Court is improper and the Court must dismiss Novacare and Mougeot-Copy.

Although Defosse was not a party to the agreement containing the forum selection clause, he is bound by the clause and thus the Court also dismisses the case against him. "A non-party will be bound to a forum selection clause where the non-party is so closely related to the dispute that it becomes foreseeable that it will be bound." U.S., ex rel. Lighting and Power Servs., Inc. v. Interface Constr. Corp., No. 4:07-CV-1144-DDN, 2007 WL 2710030, at *6 (E.D. Mo. Sept. 11, 2007) (citing Marano Enters. of Kan. v. Z-Teca Rests. L.P., 254 F.3d 753, 757 (8th Cir. 2001). The closely related test has been used to enforce forum selection clauses against parties who are bound by a clearly common interest, such as a corporation and its subsidiary and spouses. Id. Defosse, who worked for Mougeot-Copy at the time that BTC signed the forum selection clause and is being sued for his conduct during that time, is sufficiently "closely related" to be bound by the forum selection clause.

**B.      Personal Jurisdiction--Koehler and Greene**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(1). To defeat a motion to dismiss for lack of personal jurisdiction, a party need only make a prima facie showing of personal jurisdiction, which may be done through affidavits, exhibits, or other evidence. Romak USA, Inc. v. Rich, 384 F.3d 979, 983-84 (8th Cir. 2004). While the Court must view the

evidence in the light most favorable to the nonmoving party, the nonmoving party still carries the burden of proof to establish in personam jurisdiction.  Id.  Determining whether jurisdiction exists is a two-prong inquiry.  First, the requirements of the Minnesota long-arm statute must be satisfied, and second, whether jurisdiction comports with the Due Process Clause of the Fourteenth Amendment must be examined.  Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 697 (8th Cir. 1995).  Minnesota's long-arm statute is "coextensive with the limits of due process;" therefore, the only question is whether due process requirements are met in this instance.  Id.

Personal jurisdiction is established by a showing that the defendant maintains sufficient minimum contacts with the forum state "such that summoning the defendant would not offend traditional notions of fair play and substantial justice."  Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 561 (8th Cir. 2003).

> The central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there. . . . With these principles in mind, we look at five distinct factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties.

Id. at 562.  "Specific jurisdiction can only be found if the controversy is 'related to' or 'arises out of' 'the defendant's contacts with the forum state.'"  Johnson v. Woodcock, 444 F.3d 953, 956 (8th Cir.2006).  "General jurisdiction exists where the contacts between the defendant and the forum state are 'continuous and systematic' even if there is no relationship between the contacts and the cause of action."  Id. at 956.

Accepting the facts alleged in the Amended Complaint as true, the only contact Koehler or Greene had with Minnesota was the phone call during which Koehler informed BTC that it could not supply it with carbonless paper. Accordingly, BTC contends that the Court has jurisdiction over Koehler and Greene because of their participation in a conspiracy with Novacare. BTC asserts that as a participant in the conspiracy, the acts committed by Novacare are attributable to Koehler and Greene.

To establish jurisdiction based on a conspiracy theory, BTC must show "'the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries.'" Personalized Brokerage Servs., LLC v. Lucius, No. 05-1663, 2006 WL 208781 (D. Minn. Jan. 26, 2006) (quoting Remmes v. Int'l Flavors and Fragrances, Inc., 389 F. Supp. 2d 1080, 1095-96 (N.D. Iowa 2005) (quoting Jung v. Ass'n of Am. Med. Colls., 300 F. Supp. 2d 119, 141 (D.D.C. 2004))). In order to properly assert a claim of conspiracy, the plaintiff must allege specific facts suggesting that there was a meeting of the minds between the conspiring parties. Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir. 1988).

BTC's theory is that Koehler, working with Novacare, stopped supplying Novacare with carbonless paper so that Novacare would have to terminate its relationship with BTC, and in doing so, would push BTC out of the market and create more business for Koehler. BTC has not alleged any facts demonstrating a meeting of the minds between Koehler and Novacare during which they directed themselves toward an unlawful purpose. There simply is no evidence that Koehler terminated its relationship with Novacare for any other reason than its economic concerns. With regard to Greene, BTC has not alleged that Greene ever met with BTC or any of

its representatives and the record demonstrates that Greene never met Defosse or Courtois and did not have any dealings with them while they worked for Novacare. BTC has failed to demonstrate a prima facie case of conspiracy and cannot attribute Novacare's contacts in this forum to Koehler and Greene. Accordingly, the Court lacks jurisdiction over Koehler and Greene.

**C.     Courtois**

As of the date of this Order, BTC has not served Courtois. BTC shall advise the Court by Wednesday, June 25, regarding whether it intends to proceed with its case in Minnesota with Courtois as the sole defendant.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Novacare and Mougeot-Copy's Motion to Dismiss [Docket No. 10] is **GRANTED**;

2. Defendants Koehler, Richard Greene, and Marc Defosse's Motion to Dismiss [Docket Nos. 20, 30] is **GRANTED**;

3. Plaintiff BTC-USA Corporation's ("BTC") Amended Complaint [Docket No. 27] is **DISMISSED** for improper venue and lack of jurisdiction; and

4. BTC shall notify the Court by Wednesday, June 25, regarding whether it intends to proceed with its case in Minnesota with Sebastien Courtois as the sole defendant.

BY THE COURT:


  s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 16, 2008.